UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER 18-0154 |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| THOMAS J.M. GOODIN   (01)<br>MEKO R. WALKER        (02)<br>BRITTANY S. GIX         (03) | * | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to suppress filed by Defendants Thomas Goodin [doc. # 52] and Brittany Gix [doc. # 53]. For reasons explained below, it is recommended that the motions be **DENIED**.

**Background**

On October 5, 2017, at approximately 7:30 a.m., agents with Metro Narcotics[1] and MPD were inspecting packages at the FedEx located at 1111 Oliver Road, Monroe, Louisiana. (Tr. 65). As Agent Nicolas Oglesby watched packages being offloaded from a truck onto a conveyer belt, he observed one package (the "GIX package") that he found suspicious because it was in a box

---

[1] Metro Narcotics is a unit comprised of officers from the Monroe Police Department ("MPD"), West Monroe Police Department, Drug Enforcement Agency ("DEA"), sheriff's office, and state police. The unit is involved in high profile drug investigations. As part of their investigations, they conduct package interdiction at FedEx. (Hearing Transcript ("Tr.") 100, [docs. # 91, 103]). A typical interdiction works as follows: packages are offloaded from trucks onto a conveyer belt and FedEx employees scan the packages and put yellow stickers on them. If Metro Narcotics agents "see something that catches [their] eye, [they] take the box off the conveyer belt and examine it further . . . [l]ooking for different indicators that are common with parcels that contain narcotics." (Tr. 66–67). The package is then set aside, and a K-9 handler will have his dog sniff the package. If the dog gives a negative alert to the package, the package is put back on the conveyer belt to be delivered to its destination. If the dog gives a positive alert, agents will take custody of the package. (Tr. 68–69).

that had been reshaped to fit what was inside and was taped on all seams. He pulled the package off the conveyer belt for additional inspection. He observed the package was set for overnight delivery, and therefore likely expensive to ship, and it was coming from California, a source state for drugs, which indicated possible contraband in the package. (Tr. 79–82). The package was shipped in a brown box with FedEx tracking number 7879 6700 6828 and measured 19x7x7 inches. It was shipped from Tyrone Gix in Loma Linda, CA and was set to be delivered to Jordyn Gix at 912 Riverside Drive Apt. 37 in Monroe, LA, 71201. (Gov. Ex. 1, [doc. # 87-1]). Agent Oglesby ran the names Tyrone Gix and Jordyn Gix through a police database but was unable to verify whether they were real people. (Tr. 85–87).

     Agent Oglesby handed the package off for Officer Jason Hendrix and his narcotics certified K-9, Buck, to conduct an outer air sniff of the package. (Tr. 82–83). Buck alerted positively to the presence of narcotics. Agent Oglesby was not present for the sniff but was notified of the positive alert, which established probable cause to search the package. (Tr. 84, 103). He brought the package back to MPD and applied for and obtained a search warrant. When he opened the package, Agent Oglesby found a box wrapped in red birthday paper. The box contained several items, including a makeup bag. Inside the makeup bag was a taped, vacuum sealed package that weighed approximately 542 grams. The package was opened and field tested, and it tested positive for methamphetamine. (Gov. Exs. 2, 4, [docs. # 87-2, 87-4]).

     After finding the methamphetamine, Metro Narcotics agents rewrapped the package to conduct a controlled delivery to 912 Riverside Drive Apt. 37. Agent Oglesby also applied for and obtained an anticipatory search warrant for the same address. (Tr. 110; Gov. Ex. 4). At approximately 3:40 p.m., Agent Scott Sadler dressed as a delivery man and placed the package at the door. (Tr. 111); [doc. # 82 at 3]. Prior to Agent Sadler walking away from the apartment, a

black female, later identified as Brittany Gix, picked up the package and brought it inside the apartment. [doc. # 82 at 3].

A short while later, a gold Ford Expedition pulled up to the front of apartment. (*Id.*) A black male, later identified as Meko Walker, got out and went inside the apartment. When he came out, he was carrying the red birthday paper wrapped box inside a plastic Wal-Mart bag. Agents stopped and arrested Walker and secured the apartment. Agent Oglesby entered the apartment, advised Gix of her rights, and requested that she accompany him to Metro Narcotics for questioning. (Tr. 110–14).

Through Gix, Metro Narcotics obtained evidence that Thomas Goodin was the person who shipped the package from California. (Tr. 114; *see* Gov. Ex. 3, [doc. #87-3]). DEA Special Agent Vic Zordan contacted FedEx in San Bernardino, CA and obtained still photographs taken from in-store surveillance video on October 4, 2017. The photographs depict a person entering the store with a box wrapped in red birthday paper. He purportedly pays to ship the package and leaves the store empty-handed. Agent Oglesby identified the person as Goodin based on selfies Goodin texted to Gix on October 4, 2017. The outfit Goodin wore in the FedEx store appeared to be the same outfit Goodin wore in the selfies. An employee at the San Bernardino FedEx also provided a description that matched Goodin. (Tr. 114–15).

In relation to this incident, Goodin, Gix, and Walker were charged with one count of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Gix and Walker were also charged with attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)-(2), 846. [doc. # 1].

On October 19, 2018, Defendants Goodin and Gix filed motions to suppress the FedEx evidence, claiming the contraband was seized pursuant to a defective warrant. [docs. # 52, 53].

On December 21, 2018, Goodin filed a supplemental memorandum in support of his motion to suppress. [doc. # 72].

On March 1, 2019, the Government filed its response claiming (1) Defendants have no standing to contest the search of the FedEx package that did not contain either of their names; (2) officers had reasonable suspicion of criminal activity to detain the package for investigative purposes; (3) the K-9's positive alert to narcotics established probable cause to search the package; and (4) officers relied in good faith on the warrant in searching the package. [doc. # 82].

Goodin and Gix filed replies on March 5, 2019. [docs. # 84, 85].

A suppression hearing took place on March 6, 2019 and April 1, 2019, with testimony from William Scott Smith,[2] Sandra Walker,[3] Agent Oglesby, Officer Hendrix, and Detective Kwasic Heckard.[4] Defendants submitted post-hearing briefs. [docs. # 106, 108]. This matter is ripe.

## **Legal Standard**

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

---

[2] Smith is the current operations manager at the FedEx in Monroe, LA, although he was not the operations manager on October 5, 2017 nor present at the FedEx facility when the seizure took place. At the hearing, he reviewed and explained FedEx's records for the package at issue. (Tr. 9–49; *see* Defs. Ex. 1, [doc. # 88-1]).

[3] Sandra Walker is the communications supervisor at MPD. She testified as to the service detail report for Officer Hendrix on October 5, 2017. The service detail report provides the location of an officer based on his contact with dispatch. (Tr. 54–64; *see* Defs. Ex. 6-A, [doc. # 88-5]).

[4] Detective Heckard works for the MPD and is assigned to Metro Narcotics. He was at the FedEx facility on October 5, 2017 and was present when Buck conducted open air sniffs of the packages pulled off the conveyer belt. He was involved in the interdiction of a separate package that day. (Tr. 137–53; *see* Defs. Ex. 4, [doc. # 88-4]).

4

and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Generally, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

## Discussion

### I. Standing

As a threshold matter, this Court must address whether Goodin and Gix have standing to contest the search and seizure of the FedEx package. The Government contends that Goodin and Gix lack standing because they had no reasonable expectation of privacy in the package that contained neither of their names. [doc. # 82 at 4].

Fourth Amendment rights may not be vicariously asserted. *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013). "A defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his or her individual rights were violated." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). To establish standing, a defendant must demonstrate (1) "an actual, subjective expectation of privacy with respect to the place being searched or items being seized" and (2) that the expectation of privacy is one society recognizes as objectively reasonable. *Iraheta*, 764 F.3d at 461 (citations omitted). Relevant factors include "whether the defendant has a possessory interest in the thing seized . . . , whether he has the right to exclude others from [its use], whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, [and] whether he took normal precautions to maintain privacy . . . ." *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991).

The Supreme Court has recognized that "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy." *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 114 (1984)). "Individuals do not surrender their expectations of privacy in [sealed packages] when they send them by mail or common carrier." *Id.* at 773–74. Both senders and addressees of packages can reasonably expect the government will not open them unless the requirements of the Fourth Amendment are satisfied. *Id.* at 774. Further, "individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names." *Id.*; *see United States v. Pierce*, 959 F.2d 1297, 1303 n.11 (5th Cir. 1992) (noting a defendant has a reasonable expectation of privacy in a package addressed to a "fictitious entity" or an "alter ego" of the defendant but not in a package addressed to a separate individual).

6

Here, Goodwin does not contest that he sent the package. Nor does the Government contend that the intended recipient of the package was a person other than Brittany Gix. The use of the fictitious names "Tyrone Gix" and "Jordyn Gix" on the package does not constitute a surrender of the expectation of privacy. Both Goodin and Gix had a legitimate expectation of privacy in the FedEx package, and thus, have standing to challenge its search and seizure.

## II. Warrant Requirement

Defendants claim Agent Oglesby's search warrant application is deficient because "it omits key facts surrounding the activities conducted by Metro Narcotics . . . on October 5, 2017 or was based on unconfirmed third-party facts for which the affiant misunderstood or mistook for truth." [doc. # 106 at 9]. Defendants also claim that it is unclear whether Buck positively alerted to the presence of narcotics in the GIX package given evidence that Buck alerted to the presence of narcotics in a separate package with similar features on October 5th—both packages were in brown boxes, weighed 4.1 pounds, and were shipped from California. (*Id.* at 9–10; *see* Defs. Ex. 4). Officer Hendrix testified that he notifies dispatch when a dog alerts on a box so dispatch can start an investigation in the system, (Tr. 133); however, Defendants note that despite at least two positive alerts, Officer Hendrix notified dispatch only once on October 5, 2017. (*See* Defs. Ex. 6-A, [doc. # 88-5]). Finally, Defendants suggest there are timing discrepancies between the FedEx records and when Metro Narcotics purportedly seized and searched the GIX package. [doc. # 106 at 11].

The Fourth Amendment's Warrant Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Implicit in the Warrant Clause "is the assumption that factual allegations necessary to support a finding of probable cause must be *truthful*." *United States v. Guerra-Marez*, 928 F.2d 665, 670 (5th Cir.

7

1991). "Truthful" does not mean that "every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 979 (5th Cir. 2012) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). Rather, "truthful" means that "the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 164–65.

A warrant affidavit must "set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Winfrey*, 481 F. App'x at 979. "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993). The magistrate's finding of probable cause is "entitled to great deference." *Id.*

A Fourth Amendment violation may be established if the affiant makes "a false statement knowingly and intentionally, or with reckless disregard for the truth" and "the allegedly false statement is necessary to the finding of probable cause." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155–56). "Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). To determine whether facts omitted from a warrant are material, courts insert the omitted facts into the affidavit and excise any offensive language and ask whether the reconstructed affidavit establishes probable cause. *Id.*; *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002). The burden is on the defendant to prove the false information or omission was intentional or reckless. *Cavazos*, 288 F.3d at 710. "If the defendant fails to meet his burden, or if the affidavit would have sufficiently provided

8

probable cause without the false information, the warrant did not violate the Fourth Amendment and the evidence should not have been excluded." *Id.*

Here, Defendants argue that Agent Oglesby's affidavit should have stated that three packages were seized from the FedEx facility on October 5, 2017 and that Agent Oglesby had no personal knowledge of the dog sniff. [doc. # 106 at 12]. On review, these omissions are not material. Agent Oglesby's affidavit stated that several packages were removed for inspection at the FedEx facility and that Buck gave a positive alert to the presence of narcotics emanating from the GIX package. (Gov. Ex. 2). This information alone provided probable cause to search the GIX package. Details regarding the search and seizure of other packages at the FedEx facility on October 5, 2017 were not necessary to the finding of probable cause. Further, an affiant does not need to state that his affidavit specifically relies on information from third parties to establish probable cause. *See Franks*, 438 U.S. at 165. Additionally, while Defendants raise questions about the timing of the search and whether Buck actually alerted to the presence of narcotics, they have failed to provide evidence that the affidavit contained any false statements.

Overall, there was probable cause to seize and search the GIX package. An officer may detain packages for investigative purposes when there is reasonable suspicion of criminal activity, such as when the package "meets a drug package profile." *United States v. Huntsberry*, No. 17-CR-00331, 2018 WL 3129736, at *5 (W.D. La. June 8, 2018). "In such cases where a temporary detention for further investigation is involved based on reasonable suspicion, including to permit examination by drug-detecting dog, there is no Fourth Amendment violation prior to a warrant being issued." *Id.*; *see Daniel*, 982 F.2d at 150 ("[A] temporary seizure of a mailed package—removing it from the normal flow of mail—[is] not a Fourth Amendment violation [if] postal inspectors act[] on legitimate suspicions."). A K-9 sniff is not a search within the meaning

9

of the Fourth Amendment, but a K-9's positive alert to the presence of narcotics establishes probable cause for a search. *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).

In this case, based on Agent Oglesby's testimony as to what aroused his suspicion regarding the GIX package, it was not unreasonable to remove the package from the conveyer belt for further investigation, including a K-9 sniff. Once Buck alerted to the presence of narcotics, Agent Oglesby applied for a search warrant before opening the package. The magistrate then determined the application contained sufficient detail to support a finding of probable cause, and this determination is entitled to deference. Defendants have failed to prove any Fourth Amendment violation. Accordingly, the evidence seized as a result of the search of the GIX package should not be suppressed.

Goodin also claims the Government has not proven he constructively possessed the methamphetamine found inside the GIX package. [doc. # 106 at 12–13]. He relies on *State v. Pittman* to support this claim. 2011-952 (La. App. 3 Cir. 3/7/12), 85 So. 3d 821. In *Pittman*, police officers conducted a controlled delivery of a UPS package containing marijuana to the house in which the defendant resided. The defendant was subsequently charged with possession of marijuana with intent to distribute even though the Government offered no evidence that the defendant had contact with the UPS package or with anyone in the residence after the package was delivered. *Id.* at 823–25. On appeal, the Third Circuit found that the defendant "never actually or constructively possessed the marijuana found in the UPS package" and reversed his conviction. *Id.* at 826. However, Goodin's reliance on *Pittman* is misplaced. Unlike in *Pittman*, there is evidence that Goodin was the person who shipped the FedEx package containing methamphetamine to establish possession. Whether this evidence is sufficient to convict Goodin is an issue for trial, not for a motion to suppress.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' motions to suppress [docs. # 52, 53] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 20th day of May 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE